**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>*Plaintiff,*<br>**v.**<br><br>**MICHAEL SHAWN CHANDLER,**<br><br>*Defendant.* | **Case No.:  CR-23-128-JFH** |

**GOVERNMENT'S SENTENCING BRIEF AND**
**RESPONSE AND OBJECTION TO DEFENDANT'S**
**MOTION FOR DOWNWARD VARIANCE**

COMES NOW, the United States of America by and through United States Attorney Christopher J. Wilson and Assistant United States Attorney Jessie K. Pippin, and respectfully submits the following Sentencing Brief and Response and Objection to Defendant's Motion for Downward Variance.

**STATEMENT OF THE CASE**

On November 27, 2023, the Defendant pled guilty to Count 3 of the Indictment, Possession of Certain Material Involving the Sexual Exploitation of a Minor. On December 21, 2023, the Defendant pled guilty to Count 2 of the Indictment, Receipt of Certain Material Involving the Sexual Exploitation of a Minor. There is no plea agreement between the Defendant and the Government.

**INTRODUCTION**

The goal of sentencing is to achieve a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a). In doing so, the Court must account for a variety of factors specific to the particular defendant and particular case. The framework for determining an appropriate sentence is set forth

1

in § 3553(a). In particular, § 3553(a) requires that the court ensure the sentence imposed properly considers, among other factors: (1) the nature and circumstance of the offense; (2) the history and characteristics of the defendant; (3) the need to reflect the seriousness of the offense, to promote respect for the law, and provide just punishment for the offense; (4) the need to afford adequate deterrence; (5) the need to protect the public from further crimes of the defendant; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to the victims of the offense.

In the case at bar, the Defendant was caught with and confessed to the receipt and possession of child sexual abuse material (CSAM). Of the videos and photographs that the Defendant collected of babies and children being sexually abused, the Government was able to identify thirty-seven (37) victims. Although the others have yet to be identified and are still unnamed, each is a real-life human being. Below are excerpts from the identified victims who submitted impact statements in preparation for the Defendant's Sentencing.

Identified Series 1: Knowing that images and videos of my sexual abuse as a child continue to be distributed on the internet causes an unending grief.

Identified Series 2: Imagine that images and videos of your sexual abuse are still circulating online throughout the world to this very day. You are revictimized every single time one of these images or videos is viewed, downloaded, or sent to another individual.

Identified Series 3: The ongoing harm of what happened to me impacts me every single day. I cry multiple times a day and it's exhausting. I feel like everything in life is pointless. I am just existing.

Identified Series 4: I have to live with the fact that my name and child abuse materials are out there, traded among predators. The National Center for Missing and Exploited Children emailed my mother in March of 2023: "We do routinely search her name to try to find this content and notify the company of its existence, so know that we are here right alongside with you trying to get the content removed as quickly as we can." I didn't realize that they were still removing content, as I avoided looking myself up to protect myself from spiraling. It upsets me and makes me feel like I'm reliving the trauma when I see images of my victimization online, especially when I know there is a team constantly taking content down.

**SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)**

**I. The Nature and Circumstances of the Defendant's Crime (18 U.S.C § 3553(a)(1))**

The Defendant's criminal conduct is extremely serious and demands an appropriately serious sentence. On its face, the possession of child pornography "is 'a permanent record' of the depicted child's abuse and 'the harm to the child is exacerbated by its circulation'". *United States v. Paroline*, 134 S.Ct. 1710 at 1717, 572 U.S. 434, 188 L.Ed.2d 714 (2014). "The unlawful conduct of everyone who reproduces, distributes, or possesses the images of the victim's abuse…plays a part in sustaining and aggravating this tragedy…In a sense, every viewing of child pornography is a repetition of the victim's abuse." *Id.* at 1726. The United States Supreme Court also found that there is a "need to impress upon defendants that their acts are not irrelevant or victimless." *Id.* at 1729. The nature and circumstances of Defendant's conduct include distribution, receipt, and possession of child sexual material depicting abuse that cannot be described as anything other than horrific and disturbing. The videos collected by Defendant include sadistic and masochistic sexual abuse of children as well as videos of adults performing various sexual acts on infants and toddlers. The Defendant's criminal acts continue to re-victimize the children depicted in the child sexual abuse material he collected for his own sexual gratification.

**II. The Defendant's History and Characteristics (18 U.S.C. § 3553(a)(1))**

Notably absent from the Defendant's Motion for Downward Variance is the Defendant's criminal history. The Defendant's past behavior is of particular importance when considering the length of the sentence necessary in this case. This is not the Defendant's first conviction for acts relating to the victimization of children. In July of 2012, the Defendant was convicted in Sequoyah County District Court for Soliciting Sexual Conduct or Communication with Minor by Use of Technology. In that case, the Defendant stuck his hand down the back of the minor victim's pants

while she was under his care as an EMT at Roland Public Schools. The investigation revealed text messages between the Defendant and victim, wherein the Defendant was attempting to entice the victim to send him pictures, including a request for a photograph of the minor victim in her bra. The Defendant attempted to arrange a meeting with the minor victim outside of basketball games at the school and to stay home from school to 'hook up' with her. The minor victim was later interviewed and stated that she sent a picture of her nude torso which showed the top of her vagina, her bare breast, and the top of her neck. She stated that she sent the picture because she was scared of him. The minor victim then started ignoring the defendant and he started calling her and sending threatening messages from a different phone number.

After that conviction, the Defendant was required to register as a sex offender. However, even this prior conviction and his registration requirements have not deterred the Defendant from continuing to engage in conduct that victimizes children.

### III. The Need to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense (18 U.S.C. § 3553(a)(2)(A))

The Government began its brief with statements from a small percentage of the identified victims in this case. These are victims who the Defendant sought and looked at for months for his own sexual pleasure. It is easy to argue that the child pornographer is not as guilty as the abuser in the videos and pictures. However, it is a circular argument. If individuals like the Defendant did not seek each other out and agree to share these victims, there would be no market for the abusers to produce and distribute.

The Defendant's sexual desires toward babies and children ultimately led to this prosecution. If any of the individual children involved in the Defendant's collection knew that court officials in Oklahoma have seen them being raped and sodomized, it is safe to say that they would be re-victimized all over again. If any of those children knew that the Defendant

4

masturbated while watching them being degraded, hurt, and humiliated, they would certainly profess that the Defendant's crime was not "victim-less." One of the described videos is of a baby with a pacifier in its mouth when an adult male removes the pacifier and puts his penis into the baby's mouth. If and when the baby depicted in the videos becomes aware of the video, that baby will likely spend the rest of their entire life embarrassed, ashamed, and horrified of that video. The need for the sentence to reflect the seriousness of the Defendant's offense, justly punish the offense, and promote respect for the law, warrants a substantial sentence in this case.

### IV. The Need to Afford Adequate Deterrence to Criminal Conduct (18 U.S.C. § 3553(a)(2)(B))

The risk that those who possess child pornography pose to children is immense. "An analogy often used in the field may make this question easier to answer: How many people who collect baseball cards have also played the game (or would play, if given the opportunity)? In other words, do the things we collect reflect our fantasies and interests? An answer in the affirmative seems obvious." Handbook of Behavioral Criminology, p. 332, edited by Dr. Vincent B. Van Hasselt and Dr. Michael L. Bourke, Springer Intl. Publishing (2017). Likewise:

> A similar analogy addresses online collecting behavior and involves people who download images and videos about trout fishing. How many have spent time in the water with a rod and reel? Perhaps not all, but surely most. Equally important, how many of the people who watch fishing videos engage in fantasy while watching them? And this is the key point: When they view fish being pulled from scenic mountain streams, are they fantasizing about the next time they will be able to *watch* a fishing video, or the next time they will have the opportunity to *hook* a trout? It seems clear we view and collect things that reinforce our fantasies, and we fantasize about things we would like to do.

*Id*. The public has a right to be protected from a defendant who is sexually aroused by children, particularly a man like the Defendant herein who sexualizes girls as young as diapered babies.

In addition, Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence. *United States v.*

5

*Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010), (citing *United States v. Ferber*, 458 U.S. 747, 760 (1982) ("The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product"); *Osbourne v. Ohio*, 495 U.S. 102, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand"); *United States v. Goff*, 501 F.3d 250, 261 (3rd Cir. 2007) ("Deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing."); *United States v. Barevich*, 445 F.3d 956, 959 (7th Cir. 2006) ("Transporting and receiving child pornography increases market demand. The greater concern under the Guidelines is for the welfare of these exploited children. The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it."); and *United States v. Goldberg,* 491 F.3d 668, 672 (7th Cir. 2007)("The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so more will be produced.") A significant sentence for this Defendant is necessary to deter current and future pornographers and would also demonstrate to the public that the sexual re-victimization of children will be seriously addressed and deterred when discovered.

**V. The Need to Protect the Public from Future Crimes by the Defendant (18 U.S.C. § 3553(a)(2)(C))**

As part of his request for a 151 month sentence (59 months less than the minimum guideline sentence), the Defendant refers to a Report to Congress released by the United States Sentencing Commission in 2013 to argue that his conduct is "typical" for child sexual abuse material offenders. (Doc. 70). However, the Defendant has failed to demonstrate that he is at low risk of

6

re-offending and the public has a need to be protected from his future crimes, as he has previously committed a sex offense against a child.

### VI. The Need to Avoid Sentencing Disparities (18 U.S.C. § 3553(a)(6)) and Response to the Defendant's request for Downward Departure and Variance

The Defendant argues in his Motion that the enhancements he has been assessed can lead to sentencing disparities. As guidance, the Defendant cites to an outdated report from the United States Sentencing Commission. In June 2021, the United States Sentencing Commission released an updated report. United States Sentencing Comm'n Report, Federal Sentencing of Child Pornography Non-Production Offenses (2013). This report specifically discusses "aggravating conduct" among §2G2.2 offenders. *Id.* at 41.

> For purposes of this study, aggravating conduct includes the same components as the 2012 Child Pornography Report's definition of criminal sexually dangerous behavior: (1) contact sex offenses; (2) non-contact sex offenses; and (3) prior non-production child pornography offenses. Consistent with the 2012 Child Pornography Report, within this broad categorization, the Commission identified aggravating conduct that encompasses not only illegal sexual contact with a victim (e.g., child molestation involving rape or sexual assault), but *also non-contact sex offenses (e.g., illegally enticing a minor to engage in sexual conduct),* as well as production of child pornography, which itself may involve contact with the victim (e.g., an offender videotaping himself having sexual contact with a minor), and acts that do not involve contact (e.g., an offender soliciting self-produced sexual images of a minor via the internet or a cellular phone, but not engaging in sexual contact with the minor).

*Id.* at 40 (emphasis added). The report identified that offenders who engaged in aggravating conduct received a substantially lower rate of downward variances, occurring in 43.3% of cases. *Id.* at 45. However, 44.3% of those offenders were sentenced within the guideline range compared to offenders without aggravating conduct. *Id.* "Indeed, these offenders, who are arguably the most culpable among non-production child pornography offenders, received within-guideline range sentences at a rate that approaches the rate of within-guideline range sentences for the overall

federal offender population in fiscal year 2019 (51.4%). Thus, the presence of these factors—particularly aggravating conduct—appears to have a substantial effect on whether non-production child pornography offenders received a sentence within the guideline range, rather than a lower sentence through a downward variance." *Id.*

While many of the Specific Offense Characteristics of §2G2.2 apply to child sexual abuse offenders, the Defendant engaged in aggravating conduct prior to the offense charged in the case before the Court. The Defendant's prior conduct has not been quantified, either by raising the statutory mandatory minimum or by application of a pattern of activity enhancement. Thus, the Court should consider the Defendant's aggravating conduct in determining his sentence. The Defendant suggests that his conduct is that of the average child sexual abuse material offender, however, based on the 3553(a) factors of this Defendant, a within-guidelines sentence is appropriate.

### VII. The Need to Provide Restitution to any Victims of the Offense

The Presentence Investigation Report correctly identifies the victims who have requested restitution from the Defendant and the supporting documentation for each request. The Defendant's objection to the award of restitution to the victims in this case is meritless. The Supreme Court has recognized:

> The cause of the victim's general losses is the trade in her images. And Paroline is a part of that cause, for he is one of those who viewed her images. While it is not possible to identify a discrete, readily definable incremental loss he caused, it is indisputable that he was a part of the overall phenomenon that caused her general losses. Just as it undermines the purposes of tort law to turn away plaintiffs harmed by several wrongdoers, it would undermine the remedial and penological purposes of § 2259 to turn away victims in cases like this.

*Paroline v. United States*, 572 U.S. 434, 456-457 (2014). Each viewing of a file containing child sexual abuse material is a repetition of the abuse suffered by the victim. *Id.* In *Paroline*, the Supreme Court noted that where the evidence shows that the defendant possessed images depicting

8

abuse of the victim and the victim has ongoing losses caused by the trafficking of those images, a court should order a restitution amount based on the defendant's relative role in the causal process that underlies the victim's losses. *Id.* In this case, four (4) victims have made requests for restitution. In doing so, the Government has provided to the Court supporting documentation of victim impact statements, psychological evaluations and reports, research articles, and summaries of losses, sufficient for the Court to award restitution to each victim pursuant to *Paroline.* The Government respectfully urges the Court to award restitution to all four (4) victims in the amount reflected in the PSR.

## CONCLUSION

The goal of sentencing is to achieve a sentence that is "sufficient but not greater than necessary" while taking into account a variety of factors specific to the particular defendant and particular case.

The Defendant is a man who is sexually attracted to babies, toddlers, and very young girls. The Defendant obtained the extremely graphic child pornography, which he was caught receiving and possessing, after previously communicating with and attempting to meet a minor child. Each and every time the Defendant pleasured himself with the images and videos in his possession, he re-victimized a child who had already been subjected to horrific sexual abuse. It is time for the Defendant to be held accountable for all of the children hurt by his conduct. Because his criminal conduct was extreme, and based on the other § 3553(a) factors addressed above, the Defendant should be sentenced within the guideline range, as such a sentence would be sufficient but not greater than necessary given all of facts surrounding this case.

Respectfully submitted,

CHRISTOPHER J. WILSON
United States Attorney

s/ Jessie K. Pippin
Jessie K. Pippin, OBA # 33905
Assistant United States Attorney
520 Denison Avenue
Muskogee, Oklahoma 74401
Telephone: (918) 684-5100
Fax: (918) 684-5150
Jessie.Pippin@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on July 9, 2024, I electronically transmitted the foregoing to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant:

Peter Astor, Attorney for Defendant

s/ Jessie K. Pippin
JESSIE K. PIPPIN
Assistant United States Attorney

10